```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
JUEL ROUNDTREE,                                                  :
                                                                 :
                        Plaintiff,                               :
                                                                 :       15 Civ. 8198 (JPC)
                -v-                                              :
                                                                 :          OPINION
NEW YORK CITY et al.,                                            :         AND ORDER
                                                                 :
                        Defendants.                              :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

      Plaintiff Juel Roundtree was an inmate at a jail on Rikers Island in the Bronx, New York. Over the course of this litigation, Roundtree has brought a host of claims alleging a range of misconduct and unsatisfactory prison conditions at Rikers, most of which have been dismissed. What remain are his claims against the City of New York, the prison's health providers, and various doctors and corrections officers, alleging constitutional violations arising from the prison's failure to accommodate his medical condition by providing him with a double mattress and a special chair, and his allegations of excessive force arising from the prison staff's use of chemical spray. Defendants move for partial summary judgment, seeking dismissal of Roundtree's claims relating to his bedding and seating arrangements. For reasons that follow, the motion is denied, except that the Court dismisses Roundtree's claims against certain unnamed "Doe" defendants and terminates those defendants from this action.

## I. Background

**A. Facts[1]**

Roundtree was in the custody of the New York Department of Corrections ("DOC") from May 26, 2015 to December 7, 2017. Defts. 56.1 Stmt. ¶ 28. During Roundtree's time in DOC custody, detainees were provided medical treatment by Defendants Health + Hospitals Corporation ("H+H") and Corizon Health Services ("Corizon"), as well as Damian Health Services and the New York City Department of Health and Mental Hygiene. *Id.* ¶ 16.

When Roundtree entered DOC custody, he was assessed to suffer from medical conditions that included chronic pain, a torn meniscus, rotator cuff syndrome, osteoarthritis, and obesity. *Id.* ¶ 29. After being hit by a car in 2012, Roundtree experienced head trauma and injuries to his left shoulder and knees. *Id.* ¶ 30; *see* Sept. 5, 2019 Deposition at 52, 73, 81 (Roundtree testifying that he suffers from shoulder, back, hip, and knee problems and that the accident broke his elbow and bones in both legs, caused a stroke and neurological damage, and required resuscitation at the scene). Roundtree testified that "[t]hroughout [his] entire time [at] Rikers, from the first day that [he] was there, [he] communicated" that he was "experiencing pain to the medical staff." Sept. 5, 2019 Deposition at 98. The prison clinic prescribed painkillers and renewed his prescription at least once per month. Defts. 56.1 Stmt. ¶¶ 30-31. Roundtree's medication renewals were often handled by Defendant Dr. Arkady Chechever. *Id.* ¶ 33. Roundtree also occasionally was permitted to use a cane in the jail. *Id.* ¶¶ 29, 34.

---

[1] These facts come from Defendants' statement of material facts pursuant to Local Civil Rule 56.1, *see* Dkt. 223 ("Defts. 56.1 Stmt."), the declaration that Defendants submitted in support of their motion, *see* Dkt. 221 ("Ridgeway Declaration"), and exhibits attached to that declaration, most notably the September 5, 2019 and October 31, 2019 depositions of Roundtree, *see id.*, Exhs. D ("Sept. 5, 2019 Deposition"), E ("Oct. 31, 2019 Deposition").

As reflected in his medical records, Roundtree, with the support of medical professionals, requested from prison staff certain furniture, specifically a second mattress and a special chair, to alleviate his pain and discomfort.[2] During psychosocial/mental health evaluations on October 29, 2015 and November 30, 2015, Roundtree complained about the hardness of the chairs at Rikers. *Id.* ¶ 41. On March 8, 2016, Dr. Evangelista at Defendant Bellevue Hospital, on a referral from an orthopedic specialist at Rikers, examined Roundtree's shoulder injuries and recommended that he be provided a higher chair[3] and two mattresses. *Id.* ¶ 37; *see* Sept. 5, 2019 Deposition at 131-32 (testifying that a doctor at Bellevue Hospital approved his receipt of a double mattress and higher seating, which the DOC honored). In addition, on March 10, 2016, Dr. Pravin Ranjan similarly issued a permit for the jail to provide Roundtree a double mattress. Defts. 56.1 Stmt. ¶ 40.

Roundtree testified that he first requested a double mattress "after a week or two" at Rikers. Sept. 5, 2019 Deposition at 99. He testified that he told medical staff that the mattress in his cell aggravated his back and knee pain and that a doctor recommended a double mattress. *Id.* at 101, 103. Roundtree also testified that from June 2015 to March 2016, medical staff regularly provided

---

[2] Roundtree alleged in his Fourth Amended Complaint:

> Plaintiff, in June 2015[,] informed Dr. Cherchever that the beds were causing him horrendous pain due to their size, and the . . . completely useless mattress, stopping him from sleeping, worsening his degenerative disk disease/disorder, sc[i]atica, shoulder pain and arthritis in his knees and hips. Plaintiff would wake up frequently, be unable to move his entire left arm, bend or even stand at times due to joints locking, severe shooting pains that would sometimes paralyze him, prompting him to ask for a double mattress permit, transfer him to a med. ward, supply a medical mattress or different size and type of bed altogether. All these requests were refused out of hand regardless of his pain and obvious worsening of his ability to ambulate properly.

Dkt. 124 ("Fourth Am. Compl.") ¶ 28.

[3] By March 24, 2016, Roundtree evidently was provided a padded chair, as he informed a social worker that a chair had improved his condition. *Id.* ¶ 42.

3

him a double mattress, Defts. 56.1 Stmt. ¶ 43; Sept. 5, 2019 Deposition at 104, including "ten separate times," Sept. 5, 2019 Deposition at 103.  But corrections officers frequently confiscated Roundtree's second mattress.  Defts. 56.1 Stmt. ¶ 44.  They had been trained to confiscate second mattresses from all inmates except those with medical referrals.  *Id.* ¶ 49.  When his mattress was confiscated, Roundtree testified that he would get another referral, *id.*, meaning that he "had a double mattress consistently that kept being taken away . . . for almost two years," Sept. 5, 2019 Deposition at 104.  He was sometimes left without a second mattress for "quite some time."  *Id.* at 109.

The provision of a double mattress to Roundtree was consistent with DOC policy through April 2016.  Before then, an inmate was allowed to have a second mattress if that inmate received a referral from medical staff at Rikers.  Defts. 56.1 Stmt. ¶ 49.  The prison considered double mattresses "a medical decision for medical staff in the clinic."  *Id.* ¶ 48.  The jail limited double mattresses to inmates with medical referrals because of security concerns as inmates can "hide contraband—such as weapons—in or between the mattresses."  *Id.* ¶ 49.

In April 2016, however, H+H and Corizon "implemented a new policy that prohibited the issuance of two mattresses . . . by [Correctional Health Services] staff."  *Id.* ¶ 20.  That means, even if a doctor makes a referral for an inmate to receive a double mattress, DOC must now refuse to honor that referral.  *Id.* ¶ 23.  The April 2016 policy reflected the view that there is no medical justification for a double mattress referral, *id.* ¶ 22, as "the distinction between one or two mattresses is not a medical issue," *id.* ¶ 27.  Also underlying the policy was the belief of H+H and Corizon that medical staff were making so many double mattress referrals that it became a distraction from other work.  *Id.* ¶¶ 24-25.

Roundtree testified that after the policy went into effect, some sympathetic prison staff members who "understood [his] pain from watching [him] walk" allowed him to have a double mattress, but the additional mattress "kept getting . . . taken away" by security. Sept. 5, 2019 Deposition at 108-10, 113. Some medical staff members also told Roundtree that they could no longer "write out permits under the policy. *Id.* at 110. "Dr. Ranjan and Dr. Comas," however, continued to write Roundtree referrals, according to Roundtree. *Id.* at 113. But consistent with the April 2016 policy, a medical administrator named "Roberts" would ensure that such referrals were not honored. *Id.*

Roundtree testified that, in approximately July 2015, after Rikers replaced the chairs in its mess hall with benches, he sought and obtained a medical referral to continue to use a chair due to his hip problems. *Id.* at 116-18. He testified that the benches caused problems with his adductor tendons. *Id.* at 129. At some point, Roundtree was also provided two chairs to keep in his cell by a sympathetic warden who was not a doctor. Oct. 31, 2019 Deposition at 147-48. But corrections officers would remove the chairs in Roundtree's cell, causing Roundtree to seek replacements. Defts. 56.1 Stmt. ¶ 45. He "had to get new chairs every time." Sept. 5, 2019 Deposition at 120. But "[a]fter a while," Roundtree testified that he had "continued access to the chairs." Oct. 31, 2019 Deposition at 148.

Roundtree further testified that he complained about his inability to secure a double mattress to medical staff, the disability rights coordinator, and local politicians. Sept. 5, 2019 Deposition at 112. He filed "over one hundred grievances," including some "with respect to the mattress." *Id.* at 107. Because Roundtree was Chairman of the prison's Inmate Council, he was also able to raise the matter at meetings with "hierarchy in the DOC administration." *Id.* at 112.

**B. Procedural History**

Roundtree initially filed suit *pro se* and *in forma pauperis* on October 16, 2015. Dkts. 1, 2. The case was assigned to the Honorable Loretta A. Preska. Dkt. 5. On January 29, 2016, Judge Preska dismissed Roundtree's first complaint for failure to state a claim. Dkt. 10; *see* 28 U.S.C. § 1915(e)(2)(B)(ii). On May 9, 2016, Roundtree filed an amended complaint. Dkt. 17.

On June 10, 2016, the case was reassigned to the Honorable William H. Pauley III. On January 4, 2017, Rountree filed a second amended complaint. Dkt. 48. On March 27, 2017, Defendants moved to dismiss, Dkt. 53, and Judge Pauley granted the motion on March 28, 2018, Dkt. 84 ("Motion to Dismiss Opinion"). Judge Pauley dismissed all of Roundtree's claims with prejudice "except for his claims relating to: (1) deprivation of adequate bedding and seating, and (2) excessive force through the use of chemical sprays," which Judge Pauley dismissed without prejudice. *Id.* at 30. Judge Pauley ordered Roundtree to file any third amended complaint addressing only those two issues by May 25, 2018. *Id.* at 30-31. After extensions, Roundtree filed a third amended complaint (which was mistakenly docketed as his second) on July 18, 2018. Dkt. 91.

On September 11, 2018, Judge Pauley ordered Roundtree to file a fourth amended complaint limited to those two potentially surviving claims by October 15, 2018. Dkt. 105 at 4-5. After more extensions, Roundtree filed the Fourth Amended Complaint on February 5, 2019. Dkt. 124. Because the Fourth Amended Complaint pleaded claims that had previously been dismissed with prejudice, on April 17, 2019, Judge Pauley dismissed all claims but those relating to inadequate bedding and seating and the jail's use of chemical sprays. Dkt. 140 at 1. The remaining causes of action in the Fourth Amended Complaint are: (1) "Excessive Force/Failure to Intervene/Assault and Battery[/]Deliberate Indifference to Health and Safety," under 42 U.S.C.

§ 1983 and New York state law, in connection with the use of chemical sprays (Second Cause of Action), Fourth Am. Compl. ¶¶ 63-73; (2) "Denial of Reasonable Accommodations/ADA Violations/Causation of Future Harm[/]Discrimination," under 42 U.S.C. § 1983 and New York state law, for failing to provide reasonable accommodations to Roundtree (Third Cause of Action), *id.* ¶¶ 74-79; and (3) "Deliberate Indifference to Serious Medical Condition/Due Process Violations/Constitutional Violations (Cruel and Unusual Punishment)," under 42 U.S.C. § 1983 and New York state law, for Roundtree's treatment while incarcerated (Fifth Cause of Action), *id.* ¶¶ 86-91.  Roundtree's surviving allegations fall into two general categories: (1) the jail's deprivation of medically necessary bedding and seating and (2) excessive force from the use of chemical sprays.

On November 16, 2020, Defendants moved for partial summary judgment on the former set of allegations.  *See* Dkt. 225 ("Motion") at 1.  The motion is brought on behalf of "the City of New York, Corizon Medical, Warden Agustus, Captain Myrna Conyers, Captain Bennell Ellis, and Dr. Arkady Cherchever," *id.*, and argues that Roundtree cannot establish a constitutional violation based on inadequate medical care, *id.* at 3-11; the record lacks evidence of an unconstitutional municipal policy for purposes of *Monell* liability for the City, *id.* at 11-14; and the claims against the "Doe" defendants should be dismissed, *id.* at 14-15.  Defendants present no arguments challenging the evidence of inadequate medical care as it relates to particular defendants.  Nor do Defendants move for summary judgment on any claims relating to excessive force.

On July 28, 2021, this case was reassigned to the undersigned.  Roundtree's opposition to Defendants' summary judgment motion originally was due on January 12, 2021.  Dkt. 218.  Judge Pauley then granted Roundtree five extensions.  *See* Dkts. 229, 231, 238, 240, 242.  The final

extension was until September 17, 2021, *see* Dkt. 242, and the Court has still not received any opposition to summary judgment from Roundtree. The Court thus treats the matter as fully briefed.

## II. Legal Standards

A district court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)).

As noted, Roundtree is proceeding *pro se*. When a *pro se* litigant is involved, the same standards for summary judgment apply, but "the *pro se* litigant 'should be given special latitude in responding to a summary judgment motion.'" *Knowles v. N.Y.C. Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995) (quoting *Gonzalez v. Long*, 889 F. Supp. 639, 642 (E.D.N.Y. 1995)). The Court has therefore read Roundtree's pleadings "liberally and [has] interpret[ed] them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). This principle, however, has limits and "does

not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (citation and quotation marks omitted). "[A] pro se party's bald assertions unsupported by evidence" are thus "insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183-84 (S.D.N.Y. 2019) (quoting *Houston v. Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014)).

Roundtree has also failed to respond to Defendants' motion for summary judgment. When a nonmoving party fails to respond to a motion for summary judgment, "'the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden.'" *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). The Court does "not rely solely on the statement of undisputed facts," but determines whether the "evidence in the record supports the [movant's] assertion." *Vt. Teddy Bear Co.*, 373 F.3d at 244 (citation omitted). "If the evidence submitted in support . . . does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Id.* (quoting *Amaker*, 274 F.3d at 681).

### III. Discussion

#### A. Timing of Allegations

Defendants baldly assert that "the Court's prior orders of dismissal" established that the "Relevant Time Period" ended in March 2016. Motion at 4 n.1; *id.* at 6 n.2 ("Plaintiff's claims outside of the Relevant Time Period have been dismissed."). For Defendants, ending Roundtree's allegations in March 2016 would conveniently preclude evidence of the April 2016 policy change

9

that banned inmates from having double mattresses even with a doctor's referral. *See* Ridgeway Declaration, Exh. G ¶¶ 10-18.

But that is not what Judge Pauley held in his Motion to Dismiss Opinion. While Judge Pauley's recitation of the facts noted that Roundtree's allegations "stemm[ed] from his incarceration . . . from May 2015 to March 2016," Motion to Dismiss Opinion at 1, Judge Pauley did not hold that no subsequent events could be relevant. He merely described the allegations contained in the then-operative complaint. Judge Pauley further permitted Roundtree to file an amended complaint by May 25, 2018. *Id.* at 31. After that deadline was extended, Dkt. 89, Roundtree filed an amended complaint, and later filed the Fourth Amended Complaint on February 5, 2019, which included allegations after March 2016. On April 17, 2019, Judge Pauley dismissed the first, fourth, sixth, and seventh causes of action in the Fourth Amended Complaint, because those claims were "outside the scope of claims that this Court granted Roundtree leave to replead in its March 2018 Opinion & Order." Dkt. 140 at 1. While Judge Pauley restricted Roundtree's pleading to claims relating to "deprivation of adequate bedding and seating" and "excessive force through the use of chemical sprays," Motion to Dismiss Opinion at 30, he did not require that the time frame for any such allegations end in March 2016.

Here, the Fourth Amended Complaint plainly has allegations that concern conduct relating to the adequacy of Roundtree's prison accommodations that post-dated March 2016. And certainly, events that followed March 2016, including most notably the April 2016 policy change, were the subject of discovery. Nor is there any indication that Defendants objected to discovery that covered events after March 2016. Thus, Roundtree's post-March 2016 allegations in the

Fourth Amended Complaint are relevant to the Court's consideration of the motion for summary judgment.[4]

**B. Constitutional Claims**

Roundtree's constitutional claims regarding the jail's deprivation of adequate bedding and seating arise under 42 U.S.C. § 1983. Constitutional conditions-of-confinement claims have both objective and subjective components. Regarding the former, "while the Constitution 'does not mandate comfortable prisons,'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)), "prison officials [may not] expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health,'" *id.* (second alteration in original) (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). To violate the objective element of the Eighth Amendment, "a prisoner must prove that the conditions of . . . confinement violate contemporary standards of decency." *Id.* (citations omitted). Regarding the subjective prong, a plaintiff "must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have

---

[4] Even if allegations after March 2016, including allegations relating to the April 2016 policy change, were not alleged in the Fourth Amended Complaint, the Court would permit supplementation of Roundtree's pleading under Federal Rule of Civil Procedure 15(d) (empowering a court to permit a party to "supplement[]" a pleading with "event[s] that happened after the date of the pleading to be supplemented"). The Court has "broad discretion" in deciding whether to permit supplemental pleadings, *Biosafe-One, Inc. v. Hawks*, 639 F. Supp. 2d 358, 370 (S.D.N.Y. 2009) (citation omitted), even in the absence of a motion to supplement, *see Gerster v. Lindsley*, No. 05 Civ. 0203 (TJM/DEP), 2006 WL 8453056, at *3 (N.D.N.Y. Mar. 21, 2006); *Gyamfi v. Wells Fargo-Wachovia Bank*, No. 09 Civ. 3001 (DKC), 2010 WL 5173318, *2 (D. Md. Dec. 14, 2010). *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) ("[L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading[,] . . . especially when the opposing party is not prejudiced." (citations omitted)).

known, that the condition posed an excessive risk to health or safety." *Darnell v. Piniero*, 849 F.3d 17, 35 (2d Cir. 2017).

The Court also evaluates Roundtree's claims regarding his bedding and seating arrangements as alleging the denial of adequate medical care. "Courts treat claims involving inadequate mattresses as both conditions-of-confinement claims and denial of adequate medical care claims." *Walker v. County of Nassau*, No. 15 Civ. 4794 (JFB) (SIL), 2016 WL 11481725, at *10 n.4 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5338546 (E.D.N.Y. Sept. 22, 2016). Equivalent standards apply to both versions of the claim. *See Ruiz v. City of New York*, No. 16 Civ. 6073/6074 (PKC), 2018 WL 3966295, at *4-5 (E.D.N.Y. Aug. 17, 2018).

There have been sufficient complaints about the provision of double mattresses at Rikers Island that a body of law has developed in this District. "[A] plaintiff complaining about an inadequate standard-issue prison mattress must allege facts showing that (1) he had a pre-existing medical condition requiring a special bed to protect against serious damage to his future health; (2) he made that medical condition known to prison officials; (3) he requested a special bed to accommodate such medical condition; and (4) his request was denied by an official . . . [who] knew, or should have known that his or her conduct posed an excessive risk to health or safety." *Rivera v. Doe*, No. 16 Civ. 8809 (PAE) (BCM), 2018 WL 1449538, at *8 (S.D.N.Y. Feb. 26, 2018) (citations and quotation marks omitted), *report and recommendation adopted*, 2018 WL 1441386 (S.D.N.Y. Mar. 22, 2018). Given the evidence in the record to include a Bellevue doctor's recommendation that Roundtree also receive a special chair for his medical condition, the Court applies the same principles to Roundtree's allegations pertaining to his seating.

Roundtree plainly has satisfied the second and third prongs. Evidence proffered by Defendants indicates that Roundtree aggressively sought from prison officials a second mattress and a chair to alleviate his pain. Roundtree made requests to doctors, filed grievances, consulted with disability advocates, sought informal assistance from officials, and finally sued.

### 1. Medical Necessity of Special Bedding and Seating

Defendants contest, however, the first prong: whether Roundtree had a pre-existing medical condition requiring special furniture. None of the arguments offered by Defendants for an absence of material fact on this prong are persuasive.

First, Defendants argue that Roundtree was regularly provided prescription pain medication and that "there is no evidence in the record" that the lack of special bedding or seating harmed Roundtree beyond his own belief that it did. Motion at 6.[5] But parts of the record say otherwise. Roundtree testified that doctors at both Rikers and Bellevue Hospital repeatedly referred him for a double mattress to address his condition, including two doctors he specifically identified, Dr. Ranjan and Dr. Comas. *See Ruiz*, 2018 WL 3966295, at *3-4 (collecting cases holding that a medical referral for a double mattress at Rikers satisfies the objective prong). As noted, a doctor from Bellevue also recommended that Roundtree receive an elevated chair to help his medical condition. And Roundtree's need for prescription pain medication only evinces the seriousness of that condition. *See White v. Schriro*, No. 16 Civ. 6769 (PAE) (JCF), 2017 WL 3268202, at *4 (S.D.N.Y. July 31, 2017), *report and recommendation adopted*, 2018 WL 1384506 (S.D.N.Y. Mar. 16, 2018) (explaining that a plaintiff's pain medication prescriptions helped satisfy the objective test for a Rikers mattress claim). Moreover, Roundtree's testimony that the second

---

[5] Defendants have not pointed to any evidence that a second mattress or special chair did not help Roundtree. They just argue that Roundtree failed to show it did.

mattress and chair, when provided, alleviated his pain suggests that these items effectively helped manage his medical condition.

Second, Defendants argue that "the record evidence makes clear that there is no medical basis for providing any patient with a double mattress," citing the April 2016 policy banning double mattresses. Motion at 6. But the record is hardly clear on this point. Roundtree's deposition testimony suggests that at least some doctors at Rikers disagreed with Defendants' view that there can be no medical basis for providing a double mattress. According to Roundtree, certain doctors referred him for a double mattress both before and after the April policy went into effect. Sept. 5, 2019 Deposition at 110, 113. In fact, it seems that some of those doctors even disagreed with the April 2016 policy, at least as it applied to Roundtree, reflected by their disregard for that policy by continuing to issue Roundtree referrals for a second mattress. *Id.* at 113. And—as also addressed later in the section on *Monell* liability—the policy itself may constitute evidence of an unconstitutional deprivation. *See Ruiz*, 2018 WL 3966295, at *4 (holding that the plaintiff stated a claim against a doctor due to his role in approving the April 2016 policy); *Walker v. County of Nassau*, No. 15 Civ. 4794 (JFB) (SIL), 2016 WL 5338546, at *3 (E.D.N.Y. Sept. 22, 2016) (denying a motion to dismiss because the "plaintiff's allegations support[ed] an inference that defendants . . . denied him a second mattress based solely on a . . . policy of limiting inmates to a single mattress").

Third, Defendants argue that when security officers took Roundtree's chair, he said "he could 'get new chairs every time.'" Motion at 8 (quoting Sept. 5, 2019 Deposition at 120). But that is not what Roundtree said. He said that when his chair was taken, he "*had to* get new chairs every time." Sept. 5, 2019 Deposition at 120 (emphasis added). The evidence allows for an inference that padded or elevated chairs alleviated Roundtree's pain, yet prison officials repeatedly

removed such chairs from his cell.  The extent of Roundtree's deprivation is unclear from the record and cannot be resolved on summary judgment.

### 2. State of Mind

Defendants also contest whether the corrections-staff defendants knew, or should have known, of Roundtree's condition.  They argue that "[t]here is no evidence in the record that any correction[s] staff who confiscated [Roundtree's] second mattress or private chair[s] had any knowledge of [Roundtree]'s medical needs."  Motion at 10.[6]

Here too, the evidence that Defendants themselves proffered contradicts their argument. Roundtree testified that the prison routinely sent medical referrals to corrections officers.  *See* Sept. 5, 2019 Deposition at 106 ("You can ask [medical] staff to express the need, and then you ask security to clear it[,] [w]hich I got done, and security would clear it for me."), 113 (stating that "there would be a copy issued to [the] security staff, so that they would know that [Roundtree] had permission").  Roundtree further testified that corrections officers were often informed of his problems through informal channels.  *See id.* at 109 ("[C]ertain wardens would allow me to have the mattresses, and they would instruct security not to take them.  But they took them anyway."), 112-13 ("Quite a few captains and deputies, when they came into the housing area, they would instruct the security to give me a mattress, because they understood my pain . . . .").  And even if the corrections officers were not explicitly informed, it may be inferred that they were on notice based on Roundtree's apparent medical condition combined with his allegedly consistent

---

[6] Defendants do not argue that Roundtree failed to meet the subjective prong with regard to the City, H+H, Corizon, or the doctors who are named defendants.  *See* Motion at 10.

possession of a double mattress—particularly where such an item was only permitted in an inmate's cell if medically justified.[7]

Thus, Defendants have failed to show the absence of issues of material fact on all of the elements of Roundtree's constitutional claims.

### 3. *Monell* Liability

Roundtree brings his section 1983 claims against, among others, the City of New York, and alleges that an unconstitutional policy or custom was imposed on him. *See, e.g.*, Fourth Am. Compl. ¶ 33. "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694; *accord Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Liability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff."). A plaintiff may plead facts of a policy or custom by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it

---

[7] The Court notes that, with respect to this fourth prong, Defendants argue only that the corrections officer defendants lacked knowledge as to Roundtree's medical condition. They do not argue that, given Roundtree's medical condition, the failure to provide a second mattress or a special chair would not "pose[] an excessive risk to [Roundtree's] health and safety." *Rivera*, 2018 WL 1449538, at *8.

16

> amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Jones v. Westchester Cnty.*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010)).

Defendants claim that "there is simply no record evidence of any deficiencies in the City's training programs" or a "failure to supervise or monitor." Motion 14-15. But Roundtree's claim derives from the explicit April 2016 policy against providing double mattresses even after a medical referral. And there is no dispute that this policy was put in place at the jail. Defts. 56.1 Stmt. ¶ 20. This is sufficient proffered evidence of a formal policy endorsed by the municipality. *See Ruiz*, 2018 WL 3966295, at *5. And as noted above, Defendants have not come forward with undisputed evidence that allows them to prevail at this stage as to Roundtree's allegations that the refusal to provide a double mattress violated his rights.

### C. Americans with Disabilities Act and Rehabilitation Act

The Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. § 794(a), both protect individuals from discrimination on the basis of disability. Roundtree alleges that Defendants' conduct violated both. Fourth Am. Compl. ¶¶ 74-79. Both statutes require a plaintiff to establish that (1) he or she is a qualified person with a disability, (2) the defendant is subject to the ADA, and (3) he or she was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his or her disability. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Both statutes "apply to state prisons and their prisoners," *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016), and Defendants do not argue that Roundtree is not disabled. But they argue that he was not "denied access to any service, program, or activity" when he was not provided special furniture. Motion at 11.

17

A prison has an obligation to provide disabled inmates with reasonable accommodations. *See Wright*, 831 F.3d at 72-73. "[T]he Rehabilitation Act requires affirmative accommodations to ensure that facially neutral rules do not in practice discriminate against individuals with disabilities." *Henrietta D.*, 331 F.3d at 275 (citing *Dopico v. Goldschmidt*, 687 F.2d 644, 652 (2d Cir. 1982)). And the ADA bans not just "discrimination," but "deni[al of] . . . benefits." *Henrietta D.*, 331 F.3d at 276 (alteration in original) (quoting 42 U.S.C. § 12132). Thus, "the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." *Id.* at 273 (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

There is evidence in the record to allow for the inference that the prison's deprivation of adequate bedding and seating for Roundtree prevented him from participating in prison activities. He testified that the lack of a chair at mealtimes caused him to injure himself due to his hip condition, resulting in problems sitting, standing, and walking. *See* Sept. 5, 2019 Deposition at 117, 129-30. Moreover, he testified that his back pain was aggravated by his incarceration and the lack of a mattress was "life-changing," "stop[ping] [Roundtree] from doing things, from functioning," and requiring him to "sit in situ for hours and days." *Id.* at 101-02. Thus, Defendants' argument that no dispute of material fact prevents summary judgment on Roundtree's ADA and Rehabilitation Act claims fails as well.

## D.  The "Doe" Defendants

The City finally seeks summary judgment with respect to the John and Jane Doe Defendants. *See* Motion at 15-16. "[W]hen a *pro se* plaintiff brings a colorable claim against supervisory personnel, and those supervisory personnel respond with a dispositive motion grounded in the plaintiff's failure to identify the individuals who were personally involved, under

18

circumstances in which the plaintiff would not be expected to have that knowledge, dismissal should not occur without an opportunity for additional discovery." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998). In this case, though, Roundtree has had the opportunity to amend his complaint several times and a lengthy period of discovery has closed. The Court thus dismisses John Does 1 through 10 and Jane Does 1 through 5 as defendants, though not the defendant named as Disability Rights Coordinator (Jane Doe #1), who Roundtree has identified with reasonable particularity.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied except with respect to John Does 1 through 10 and Jane Does 1 through 5. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 219. The Clerk of Court is also respectfully directed to mail this opinion to the *pro se* plaintiff.

SO ORDERED.

Dated: September 30, 2021  
New York, New York

_____  
JOHN P. CRONAN  
United States District Judge